RECEIVED

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
2020 JUL 22  P 3: 50

*Alexandria Division*    CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal No. 1:19-cr-334 (LMB) |
| | ) |
| XIZHI LI, | ) **(Under Seal)** |
| | ) |
| Defendant. | ) |

FILED

JUL 2 2 2020

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

### Government's Opposition to Defendant's
### Motion to Dismiss on Speedy Trial Grounds

On July 17, 2020, defendant, Xizhi Li, moved to dismiss his indictment on Speedy Trial

Act grounds. (ECF No. 66.) Specifically, the defendant "does not concede that the General Orders

of this Court restricting proceedings as a consequence of the pandemic appropriately respect his

right to a Speedy Trial." *Id.* For the following reasons, the Court should deny the defendant's

motion.

### Procedural History

**A.      The defendant is arraigned and the Court certifies the case as "complex."**

On November 7, 2019, the defendant was charged in a three-count indictment with:

- Conspiring to distribute five kilograms or more of cocaine, in violation of
  21 U.S.C. §§ 841, 846;

- Conspiring to distribute five kilograms or more of cocaine knowing and
  intending it would be unlawfully imported into the United States, in
  violation of 21 U.S.C. §§ 959, 960, 963; and

- Conspiring to Commit Money Laundering, in violation of 18 U.S.C.
  § 1956(h).

(*See* ECF No. 1.) The defendant was arrested on December 17, 2019, in the Southern District of

Texas, after being expelled from Mexico. (ECF No. 27 at 2.)  On December 19, 2019, the defendant

had his initial appearance before Magistrate Judge Michael S. Nachmanoff. (ECF No. 11.) The defendant was ordered temporarily detained and appointed an attorney, Jorge Enrique Artieda. (ECF Nos. 12, 13.)

The defendant was arraigned before this Court on January 10, 2020. (ECF No. 26.) At the arraignment, the Court granted attorney Jorge Artieda's oral motion to be released from the case, to be replaced by attorneys Robert Hsu and Greg Hunter. (ECF Nos. 23, 26.)

The government moved for the entry of a consent order deeming the case "complex" under 18 U.S.C. § 3161(h)(7)(B)(ii). Citing the nature of the case ("a far-reaching international conspiracy"), the considerable amount of anticipated discovery (including electronic data in various Chinese dialects), the substantial foreign and wiretap evidence, an outstanding MLAT request, foreign witness travel, as well as the fact that a co-defendant in the case had not yet been arrested, among other reasons, the government stated that it was "unreasonable to expect adequate preparation for pretrial proceedings or for trial itself within the time limits established by the Speedy Trial Act." (ECF No. 27 at 3–4 (internal quotation marks and citation omitted).). The government concluded its motion by noting that "undersigned counsel have conferred with counsel· for defendant Li, who has advised that he consents to this motion." *Id.* at 5.

The Court granted the government's motion, deeming the case complex under 18 U.S.C. § 3161 (h)(7)(B)(ii) and finding "that the ends of justice served in scheduling a trial beyond the seventy-day deadline established by the Speedy Trial Act outweigh the best interests of the public and the defendant in a speedy trial[.]" (ECF No. 28.) The Court also noted at the arraignment "that this case is complex for, among other reasons, the fact that not all the defendants are here, and it does not make good sense to be trying one defendant when there are others out there." (Arraignment Tr. at 6.) At the parties' request, the Court set a status conference, instead of a trial

2

date, for March 13, 2020.

**B.      March 13: The government moves for a continuance.**

On March 13, 2020, the day of the previously-scheduled status conference, the government

filed a consent motion for a continuance of the status hearing. (*See* ECF No. 40.) As explained in

the government's motion, on or about March 12, 2020, the government learned that the defendant

was experiencing "cold/flu symptoms," and that, given the heightened concern surrounding

infectious viruses and diseases, the U.S. Marshalls had informed the Court that they would not be

transporting the defendant to the courthouse for the hearing. (*Id.* at 2.) The parties therefore

requested a continuance of the status conference until March 20, 2020. (*Id.*)

**C.      March 13: Chief Judge Davis issues General Order No. 2020-02.**

On the same day the government sought a continuance, March 13, 2020, Chief Judge Davis

issued General Order No. 2020-02.[1] Through this order, Chief Judge Davis noted that

> [g]iven the fact that the Commonwealth of Virginia is now under a state of
> emergency due to the COVID-19 pandemic and given the growing number of
> confirmed cases within this District, the Commonwealth of Virginia, and the
> surrounding states, as well as the rising number of U.S. and worldwide fatalities,
> additional preventative measures are appropriate at this time.

Gen. Order No. 2020-02 at 3. Among the preventative measures taken, Chief Judge Davis

continued "all civil and criminal (grand and petit) jury empanelments, jury trials, and grand jury

proceedings, scheduled to commence from March 16, 2020 through April 17, 2020." *Id.* In an

explanatory footnote, General Order No. 2020-02 explained as follows:

> The process of selecting a grand or petit jury for a federal proceeding inherently
> involves a crowded courtroom, sometimes requiring prospective jurors to spend an
> entire day, or longer, crowded onto bench seats where they cannot avoid contact
> with the individuals sitting next to them. Furthermore even after a grand or petit
> jury is selected and empaneled, the jurors are required to sit closely together in the

---

[1] General Order No. 2020-02 is available at
http://www.vaed.uscourts.gov/pdf/General%20Order%202020-02.pdf

jury box or room and spend the majority of the day sharing the same confined space.

*Id.* at 3 n.3. With regards to criminal trials, General Order No. 2020-02 went on to specify that

> due to the Court's anticipated reduced ability to obtain an adequate spectrum of jurors, the risk posed to the jurors and the public, and the effect of the public health recommendations on the availability of counsel and Court staff to be present in the courtroom, the time period of the continuances implements by this Order will be excluded under the Speedy Trial Act, as the Court specifically finds that the ends of justice served by ordering the continuances outweigh the best interests of the public and each defendant in a speedy trial. *See* 18 U.S.C. § 3161(h)(7)(A).

*Id.* at 3–4.

### D.    March 16: The Court grants the continuance and Chief Judge Davis issues General Order No. 2020-03.

On March 16, 2020, the Court granted the government's motion and continued the status conference until March 20, 2020. (ECF No. 41.) Also on that day, Chief Judge Davis issued General Order No. 2020-03.[2] Among other things, General Order No. 2020-03 noted the various steps the Court had taken to address the then-extremely-novel issue of COVID-19's spread. Given several recent developments, including the declaration of a national emergency by the President of the United States and the Governor of Virginia, the suspension of university and K-12 public school courses, and "the growing number of confirmed COVID-19 cases within this District, the Commonwealth of Virginia, and the surrounding states," the Court found additional preventative measures were appropriate. *See* Gen. Order No. 2020-03 at 2–3. As relevant here, one of these preventative measures was the postponement of all court appearances, trials, and hearings scheduled to occur from March 17, 2020, through March 31, 2020. *Id.* at 3.

On March 18, 2020, two days after Chief Judge Davis issued General Order No. 2020-03,

---

[2] General Order No. 2020-03 is available at http://www.vaed.uscourts.gov/pdf/General%20Order%202020-03(1).pdf

4

and in "accordance" with that order, the Court continued the status conference scheduled for March

20, 2020, until May 1, 2020. (ECF No. 42.)

  **E.  March 24: Chief Judge Davis issues General Order No. 2020-07.**

  On March 24, 2020, Chief Judge Davis issued General Order No. 2020-06. *See In re*

*Extension to Modifications of Court Operations: Supplement to Gen. Orders 2020-02 & 2020-03,*

No. 2:20MC7, 2020 WL 1441770 (E.D. Va. Mar. 24, 2020). The purpose of General Order

No. 2020-06 was to "supplement" earlier orders, including General Order No. 2020-02. The order

began as follows:

> Since the entry of [prior] Orders, the United States District Court for the Eastern
> District of Virginia has continued to closely monitor the outbreak of Coronavirus
> Disease 2019 (COVID-19), as well as the developing guidance from the Centers
> for Disease Control and Prevention ("CDC"), and the increasingly stringent
> responses from all branches and levels of government. This includes the President
> of the United States' recommendation that all Americans avoid gathering in groups
> of more than ten people, the CDC's recommendation that all Americans avoid close
> contact with other people (i.e., being within six feet) "if COVID-19 is spreading in
> your community," and … sixteen states [have] issu[ed] "stay home" orders[.] …
> Additionally, yesterday, the Governor of Maryland issued an order closing all non-
> essential businesses, as well as an advisory urging citizens to stay in their homes
> unless they have an essential reason to go out. The Governor of Virginia likewise
> acted yesterday to: (1) close all K-12 schools for the remainder of the 2019-2020
> school year; and (2) close certain categories of non-essential businesses. Both the
> Maryland and Virginia executive orders permit fines and imprisonment as a
> punishment for violating such orders.

*Id.* at *1. After elaborating on the rising numbers of infected citizens, General Order No. 2020-02

then noted that "[h]ealth officials have consistently warned that the next several weeks pose the

greatest risk of increased community transmission of COVID-19, and that without additional

isolation measures designed to 'flatten the curve' of the arc reflecting diagnosed cases, the

healthcare system risks being overwhelmed and therefore unable to adequately care for those

sickened by COVID-19." *Id.* at *2. The order also observed that "the three areas of greatest

concentration of COVID-19 cases in Virginia all fall within commuting distance to a federal

Courthouse in the District. Additionally, data currently available from the Virginia Department of Health reveals that approximately 90% of the confirmed COVID-19 cases in Virginia are located within the Eastern District." *Id.*

For these and other reasons, including "the day-to-day evolution of state-wide shutdowns[,]" "increasing community spread of COVID-19[,]" and "the procedural challenges to seating a jury in the midst of the COVID-19 pandemic[,]" Chief Judge Davis continued all criminal trials until May 1, 2020. *Id.* at *3. In doing so, Chief Judge Davis made the following findings:

> The Court makes such findings after balancing the factors discussed in 18 U.S.C. § 3161(h)(7)(B), as the Court finds that the exclusion of such time from the speedy trial period is necessary to balance the health and safety of jurors and prospective jurors, court employees, litigants (to include criminal defendants), counsel, judges, and the public, with the Constitutional responsibility to continue federal court operations during the COVID-19 outbreak. In particular, the increasingly stringent responses from various branches and levels of government, to include the statewide "stay home" orders, as well as the growing number of COVID-19 cases confirmed within this District, and the ongoing recommendations from health officials regarding the immediate need to limit gatherings and person-to-person contact, mandate swift action to protect the public health and outweighs the rights of the impacted defendants, and the public, to a speedy trial.

*Id.* About one week later, on March 30, 2020, this Court continued the previously scheduled status conference from May 1, 2020, until May 22, 2020. (ECF No. 45.)

**F.    April 10: Chief Judge Davis issues General Order No. 2020-12 and the defendant moves to substitute counsel.**

On April 10, 2020, Chief Judge Davis issued General Order No. 2020-12.[3] Through this order, Chief Judge Davis supplemented prior general orders and provided updated information on the status of the pandemic and its impact on the District. General Order No. 2020-12 first noted as follows:

---

[3] General Order No. 2020-12 is available at http://www.vaed.uscourts.gov/notices/Gen%20Order%202020-12%20Court%20Operations%20Updated%20Notices.pdf

6

> In the past several days, the CDC has provided updated guidance on the efficacy of members of the public wearing cloth face coverings, now recommending that they be worn by all Americans when around others in light of increased concerns regarding: (1) the extent of asymptomatic transmission; and (2) the potential for the virus to be transmitted through mere conversations or breathing rather than requiring a cough or sneeze to render the virus airborne.

*Id.* at 1–2. General Order No. 2020-12 also noted that since the prior court order (issued on March 24), "the Governor of Virginia issued a 'stay home' order that is in effect until June 10, 2020, instructing all Virginians to remain in their homes unless leaving to engage in an activity designated as permissible by such "stay home" order." *Id.* at 2. Continuing, the order explained that "[t]he statewide response in Virginia acknowledges the reality that conditions will remain dangerous even after the future 'peak' of COVID-19 cases in Virginia, and thus, the Virginia restrictions extend into early June, to include the closure of all K-12 schools for the remainder of the 2019-2020 school year." *Id.*

Addressing the recent surge in COVID-19 cases, General Order No. 2020-12 noted that "notwithstanding the substantial restrictions adopted in Virginia and most other states, the CDC continues to report approximately 30,000 new COVID-19 cases in the United States each day, and more than 16,000 Americans have died from COVID-19 over the last several weeks." *Id.* at 3. For these and other reasons, Chief Judge Davis continued until June 10, 2020, all criminal trials as follows:

> For the same reasons stated above outlining the increasing severity of the state and federal responses to COVID-19, and for the reasons explained in detail in General Orders 2020-06 and 2020-07, to include the procedural challenges to seating a jury in the midst of the COVID-19 pandemic and the Governor's stay home order, the period of May 2, 2020, through June 10, 2020, is hereby excluded from the respective speedy trial calculations for both the return of an indictment and the commencement of trial, pursuant to 18 U.S.C. § 3161(h)(7)(A). The Court makes such "ends of justice" findings after balancing the factors discussed in 18 U.S.C. § 3161(h)(7)(B), as the Court finds that the exclusion of such time from the respective speedy trial periods is necessary to balance the health and safety of jurors and prospective jurors, court employees, criminal defendants, counsel, judges, and the public with the Constitutional responsibility to continue federal court operations

7

during the COVID-19 outbreak. In particular, the expanding number of COVID-19 hospitalizations and deaths in Virginia, and the statewide "stay home" order currently in place through June 10, 2020, mandates a robust response from our Court to protect the public health, with the need to protect the health of the public in the midst of a deadly nationwide pandemic outweighing the rights of the impacted defendants, and the public, to a speedy trial.

*Id.* at 6–7.

On the same day Chief Judge Davis issued General Order No. 2020-12 (April 10, 2020), the defendant moved to substitute counsel for attorney John C. Kiyonaga. (ECF No. 46.) The Court granted the motion on April 13, 2020. (ECF No. 47.) On May 7, 2020, the Court continued the status conference scheduled for May 22, 2020 until June 12, 2020. (ECF No. 48.)

### G.    May 26: Chief Judge Davis issues General Order No. 2020-16.

On May 26, 2020, Chief Judge Davis issued General Order No. 2020-16. *See In re Court Operations Under the Exigent Circumstances Created By the Outbreak of Coronavirus Disease 2019 (COVID-19): Phased Expansion of Court Operations*, No. 2:20MC7, 2020 WL 2735933 (E.D. Va. May 26, 2020). General Order No. 2020-16 continued criminal jury trials until July 7, 2020. As specified in Chief Judge Davis' order:

> [j]ury trials involve additional exposure risks that necessitate a further reduction in COVID-19 cases within our District before they can be safely conducted, as well as the creation of special procedures to reduce the risk of COVID-19 exposure during trial, which may require the reconfiguration of Courtrooms and/or the use of multiple Courtrooms to conduct a single jury trial. Moreover, the additional time will permit the Court to develop and circulate safety procedures to prospective jurors, witnesses, litigants, attorneys, and the public, in order to foster confidence in the safety of the jury process.

*Id.* at *2. General Order No. 2020-16 specified that the Court was seeking a solution to the problem of jury trials during the pandemic and that

> [e]fforts will also be made to develop a process to pre-screen prospective jurors in order to reduce the number of individuals that are summonsed to the Courthouse only to be excused at an early stage in the Voir Dire process. The [Administrative Office of the United States Courts'] working group responsible for addressing the resumption of jury trials is still actively developing guidance on how to safely

8

conduct jury trials in the midst of the COVID-19 pandemic[.]

*Id*. General Order No. 2020-16 also provided an update on the pandemic situation in Virginia, as

well as the Court's anticipated staged expansion of operations, as guided by the Administrative

Office of the United States Courts' "gating criteria." *Id*. at *3. As explained in the order, the gating

criteria "should be satisfied before a court proceeds with a phased reopening, to include sustained

downward trending average of cumulative daily COVID-19 case counts over a 14-day period, and

a rescission of local restrictive movement and/or shelter in place orders." *Id*. (internal quotation

marks omitted).

Given the state of the pandemic in Virginia, Chief Judge Davis found it premature to

reinitiate criminal jury trials and explained his reasoning as follows:

> the Court finds that it is premature to begin jury trials on June 11, 2020, when the
> other proceedings referenced above are permitted to begin, because of, among other
> considerations: (1) the slight relaxation (as contrasted with "rescission") of local
> restrictive movement orders in Virginia; (2) the fact that cities and/or counties
> located in three of the four Divisions of this Court remain in "Phase Zero" of
> Virginia's phased reopening plan and have not yet implemented their anticipated
> "relaxation" of restrictive movement orders; (3) the sheer number of individuals
> (including jurors and alternate jurors, the presiding judge, court staff, counsel,
> litigants, U.S. Marshals, Court security officers, witnesses, and members of the
> public) that are present in the same room during a jury trial; (4) the increased
> exposure risk to incarcerated Defendants, U.S. Marshals, and local jail officials
> when incarcerated Defendants are repeatedly transferred to and from our
> courthouses over the course of a multi-day or multi-week trial; (5) the physical
> distancing challenges associated with bench conferences, which are a frequent
> occurrence in both criminal and civil trials; and (6) the fact that our existing
> physical facilities, as currently designed and used, place jurors far less than six feet
> apart for almost the entire trial day (to include in the jury assembly room,
> Courtroom gallery, Courtroom jury box, and in relatively small jury rooms).

*Id*. at *5. Chef Judge Davis concluded by making the following ends of justice finding:

> Based on the Court's inability to safely conduct jury trials at this time, to include
> the likely and understandable difficulty for any empaneled juror to maintain focus
> on the presentation of evidence to the degree necessary to provide a fair trial in the
> absence of robust procedures to ensure juror safety, and for the reasons stated in
> General Orders 2020-06, 2020-07 and 2020-12, the period of June 11, 2020,
> through July 6, 2020, is hereby excluded from the speedy trial calculations for the

9

commencement of trial, pursuant to 18 U.S.C. § 3161(h)(7)(A). The Court makes such "ends of justice" findings after balancing the factors discussed in 18 U.S.C. § 3161(h)(7)(B), and finds that the exclusion of such time is necessary to avoid a miscarriage of justice, to allow lawyers and litigants the time necessary for effective preparation, and to balance the health and safety of jurors and prospective jurors, court employees, criminal defendants, counsel, judges, and the public with the Constitutional and statutory responsibility to continue federal court operations during the COVID-19 pandemic.

*Id.* at *5 n.10.

### H.    June 12: The parties appear for a status conference.

On June 12, 2020, the parties appeared before the Court for a status conference. With regards to setting a trial date, the Court stated as follows:

the difficulty we have right now is as a practical matter, we're unable to schedule any jury trials because of the corona virus situation until after Labor Day. I'm prepared to give you a trial date now that's going to be for the fall.

\*      \*      \*

There have been multiple findings by the chief judge that are of record of the general orders about the difficulty with setting up a safe jury trial in which both the participants in the trial and the jurors can safely sit for multiple hours and days, and this, I suspect, would be a longish trial, safely with the virus still circulating in the environment. This is an exigent circumstance. The Speedy Trial Act has essentially been held in abeyance while this medical emergency exists, and its uniform throughout the country.

\*      \*      \*

And I know that state court here in Alexandria, I was just advised that they're not likely to start any criminal trials before Labor Day, and so we need to set a date.

(Tr. of June 12, 2020 Status Conference at 10–11.) Defense counsel then stated he was "not waiving his speedy trial right[.]" *Id* at 11. The Court responded, in pertinent part, that "the reality of it is we cannot set the case before Labor Day. It's just not going to work." *Id.* at 12. Continuing, the Court observed "that this is the only safe way and the only responsible way to approach the situation." *Id.*

Defense counsel then requested a trial date the day after Labor Day and the Court suggested

10

that "later in September would probably be better." *Id*. In turn, the government suggested a trial

date in either December 2020 or early 2021, citing the complexity of the case, including the

pending MLAT request, the number of witnesses requiring preparation, and the difficulty, due to

the coronavirus, of having contact with these witnesses and interpreters. *Id*. at 13–14. The

government also noted that defense counsel "was asking for a three-month status conference when

we walked into court today" and that it was therefore "surprised to hear the haste for a trial the day

after Labor Day." *Id*. at 13. The Court then responded that:

> the complexity of a case, especially, because there may be quarantines on foreign
> travel which hold people up for two or three weeks before they can come into the
> courthouse, that is certainly an additional factor and does make this case perhaps
> more complicate than, than others. Certainly September would be too soon, and
> especially if, in fact, you have been preliminary before this hearing today talking
> about an extended time period.

*Id*. at 14. The Court then offered the first week of December 2020 as a possible trial date. *Id*. at 15.

Defense counsel responded that he was going to be out of the country until "the Friday previous

to the 7th [of December] [.]" *Id*. In response, the Court stated it would have to "kick [the trial] into

2021." *Id*. The government noted it had no conflicts and the Court proposed January 19, 2021, as

the trial date. Defense counsel then stated he had a preexisting trial scheduled on that day. *Id*. The

Court then offered a trial date of February 1, 2020, to which defense counsel responded, "I think

that's a little bit early." *Id*. at 16. The parties then agreed to a February 15, 2021 trial date. *Id*.

Subsequently discovering that February 15 was a federal holiday, the Court later pushed the trial

to February 16, 2021.

## Argument

On July 13, 2020, the defendant moved to dismiss the indictment as violative of the Speedy

Trial Act, 18 U.S.C. § 3161. (ECF No. 66.) The motion to dismiss, which is precisely one-page

long and cites no authorities, appears to challenge both the Court's prior designation of the case as

"complex" as well as the Court's finding that, due to the COVID-19 pandemic, it could not reasonably hold a trial until after Labor Day. *Id.* Although the defendant's argument is not entirely clear, the government provides responses two both sets of claims, construing them, in an abundance of caution, in their broadest terms.[4]

## I.      Governing Legal Framework

Under the Speedy Trial Act, a defendant's trial "shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). "If prosecution originates with an indictment, the period runs from the defendant's first appearance after indictment." *United States v. Carey*, 746 F.2d 228, 229 n.1 (4th Cir. 1984).

The Act provides several different exclusions from the 70-day time period. One such exclusion pertains to "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." § 3161(h)(1)(D). This exception excludes from speedy trial calculations "the period between [a pretrial motion's] filing and its resolution." *United States v. Riley*, 991 F.2d 120, 124 (4th Cir. 1993). Another exclusion involves "[a]ny period of delay resulting from a continuance granted by

---

[4] The defendant noticed an appeal in the Fourth Circuit of this Court's forfeiture order on June 26, 2020. Generally, the filing of a notice of appeal is an event of jurisdictional significance, immediately divesting jurisdiction from the district court and conferring it on the appellate court. Here, however, the defendant's appeal has no connection to the speedy trial issue and so resolution of the instant motion may be proper. *See United States v. Montgomery*, 262 F.3d 233, 239 (4th Cir. 2001) ("Ordinarily, an appeal confers jurisdiction on the court of appeals and divests the district court of its control over *those aspects of the case involved in the appeal*.") (internal quotation marks and citation omitted) (emphasis added).

Notwithstanding the jurisdictional question, as explained below, the defendant's pending appeal carries speedy trial implications.

any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of [her] findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." § 3161(h)(7)(A).

In granting an exception under the "ends of justice" provision, the court must make findings based on several factors, including: "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice[]" or "[w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section." § 3161(h)(7)(B)(i), (ii).

"The defendant bears the burden of proving a Speedy Trial Act violation." *United States v. Nesbitt*, 464 F. App'x 89, 90 (4th Cir. 2012) (citing 18 U.S.C. § 3162(a)(2); *United States v. O'Connor*, 656 F.3d 630, 633 (7th Cir. 2011)). The Fourth Circuit reviews a district court's legal conclusions regarding the Speedy Trial Act *de novo* and its factual findings for clear error on appeal. *United States v. Jarrell*, 147 F.3d 315, 317 (4th Cir. 1998); *United States v. Stoudenmire*, 74 F.3d 60, 63 (4th Cir. 1996).

## II.     There is no Speedy Trial Act violation in this case.

### A.     The Court's designation of the case as complex tolled the speedy trial clock.

The defendant was arraigned on January 10, 2020. (ECF No. 26.) At the arraignment, the government moved for the entry of a consent order deeming the case "complex" under § 3161(h)(7)(B)(ii). Due to the nature of the case, the considerable amount of discovery, which included electronic data in foreign languages, the substantial volume of foreign and wiretap evidence, an outstanding MLAT request, foreign witness travel, and a codefendant's outstanding

13

arrest, among other reasons, the government stated that it was "unreasonable to expect adequate preparation for pretrial proceedings or for trial itself within the time limits established by the Speedy Trial Act." (ECF No. 27 at 3–4 (internal quotation marks and citation omitted)). The Court granted the government's consent motion and deemed the case complex under § 3161 (h)(7)(B)(ii).

In doing so, the Court found "that the ends of justice served in scheduling a trial beyond the seventy-day deadline established by the Speedy Trial Act outweigh the best interests of the public and the defendant in a speedy trial[.]" (ECF No. 28.); *see also* (Arraignment Tr. at 6 (finding case complex for, among other reasons, a codefendant's outstanding arrest).) Designating the case complex on this basis was eminently reasonable and well within the bounds of the Court's discretion. *See United States v. Shealey*, 641 F.3d 627, 632 n.* (4th Cir. 2011) ("Abdallah had recently obtained a new lawyer and substantial new discovery material—and the Government had just filed a superseding indictment with additional substantive charges and new co-defendants. That fits within at least two of the "ends of justice" factors, namely the case's complexity and time to prepare for trial. 18 U.S.C. § 3161(h)(7)(B)(i) and (iv)."); *United States v. Mir*, 525 F.3d 351, 358 (4th Cir. 2008) ("[T]he district court found numerous reasons why the interests of justice were served by a continuance. For example, the district court found that the government needed more time 'to obtain information from witnesses in the Middle East" (internal quotation marks and citation omitted)); *accord United States v. Ellis*, 781 F. App'x 271, 273 (4th Cir. 2019) ("The court ruled, as to each continuance, that defense counsel needed additional time to prepare. We find that, under the circumstances, this reasoning was sufficient."). In addition to consenting to designating the case complex on this basis, the defendant also opted to move for the scheduling of a subsequent status conference, instead of a trial date, which the Court set for March 13, 2020.

Before a delay can be considered excludable from the 70-day computation, the Court must

14

explain, "either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." § 3161(h)(7)(A). Those "findings must be made, if only in the judge's mind, before granting the continuance[.]" *Zedner v. United States*, 547 U.S. 489, 506–07 (2006). Here, it is "clear from the record that the court conducted the mandatory balancing contemporaneously with the granting of the continuance." *United States v. Henry*, 538 F.3d 300, 304 (4th Cir. 2008) (quoting *United States v. Keith*, 42 F.3d 234, 237 (4th Cir. 1994)) (internal quotation marks omitted). The Court cited the relevant statute, § 3161(h)(7)(A), and referenced the pertinent "ends of justice" language. On this record, that was sufficient. *Cf. Shealey*, 641 F.3d at 632 n.\* ("While the district court did not reference these factors by numeral, it sufficiently explained its reasoning on the record and referenced the "ends of justice" language in § 3161(h)."); *see also United States v. Lucas*, 499 F.3d 769, 783 (8th Cir. 2007) (deeming a court's explanation sufficient to "show compliance with the Act, particularly in the context of the government's stated reasons for requesting the continuance.").

The defendant offers no argument as to the inadequacy of the Court's complex-case-designation. Nor could he. After all, he consented to it. Because the Court properly certified this case as complex at the arraignment, the speedy trial clock was tolled on January 10, 2020, under § 3161(h)(7)(B)(ii).

**B.     The Court's rationale for setting a trial date after Labor Day was reasonable given the facts of this case.**

The defendant appears to challenge the Court's scheduling of a trial for February 16, 2021. According to the defendant, he withdrew "consent" for the complex case designation at the June 12, 2020 status conference and "does not concede that the General Orders of this Court restricting proceedings as a consequence of the pandemic, appropriately respect his right to a

Speedy Trial." (ECF No. 66.) As the argument seems to go, during the June 12 status conference "the Court ruled that no trial was feasible prior to Labor Day in view of the coronavirus pandemic[,]" and therefore the "Court's scheduling of the trial on February 16, 2021" infringes on the defendant's rights under the Speedy Trial Act. *Id.*

As a preliminary matter, the defendant's challenge to the February trial date is misplaced. The Court offered the defendant a trial date in early December 2020 and mid-January 2021 and defense counsel declined both due to preexisting conflicts. (Tr. of June 12, 2020 Status Conference at 15–16.) The defendant cannot now complain that the Court's mid-February trial date was erroneously set. *See United States v. Grimmond*, 137 F.3d 823, 829 n.7 (4th Cir. 1998) ("The four month delay between Grimmond's arraignment and his trial is attributable to his own motion to continue the trial date."); *accord Keith*, 42 F.3d at 237 ("If the underlying reasons for the granting of the continuance, as agreed to by the defendant, support an ends of justice finding under the Act, the defendant should not be at liberty to take advantage of that discrete period of time covered by the [agreed to] continuance."). Nor can he claim that this trial date had anything to do with the coronavirus. The Court recognized at the status conference the difficulties surrounding conducting trials during the pandemic but nevertheless offered the defendant a trial in December. The defendant declined the offer; hence the date in mid-February.

As to the defendant's request for a trial the day after Labor Day, the Court properly found that due to the complexity of the case, including the possibility that "there may be quarantines on foreign travel which hold people up for two or three weeks before they can come into the courthouse, . . . September would be too soon, and especially if, in fact, you have been preliminary before this hearing today talking about an extended time period." *Id.* at 14. This finding was either an extension of the Court's prior complex case certification or itself a follow-up finding. Either

way, it was sufficient on this record. *See Shealey*, 641 F.3d at 632 n.*.[5] Moreover, the Court's finding that defense counsel was not legitimately interested in a trial the day after Labor Day was correct and left unchallenged. *Accord United States v. Dignam*, 716 F.3d 915, 923 (5th Cir. 2013) ("[Defendant] did not allege a speedy trial violation until August 2011; and the record indicates that she was in no hurry to proceed to trial.").

Moreover, the defendant noticed an appeal of the district court's forfeiture order on June 26. Under the Speedy Trial Act, "[a]ny period of delay resulting from other proceedings concerning the defendant[,]" including "delay resulting from any interlocutory appeal," "shall be excluded in computing the time ... within which the trial of any such offense must commence[.]" § 3161(h)(1)(c). The defendant's now-pending forfeiture appeal is "clearly interlocutory: It occurs between the commencement of the litigation and the conclusion thereof, and it decides one issue but not the entire controversy." *United States v. Hawkins*, 788 F.2d 200, 202 (4th Cir. 1986). As such, the speedy trial clock is currently tolled irrespective of any decision of this Court.

And finally, the defendant filed an additional motion to dismiss on the day he filed the instant motion. (*See* ECF No. 67.) This too tolls the speedy trial clock under § 3161(h)(1)(D*). See United States v. Osteen*, 254 F.3d 521, 525 (4th Cir. 2001) ("[U]pon the filing of a pretrial motion, the Speedy Trial Act 'clock' stops, and it does not start again until all such motions are resolved.").

---

[5] The defendant argues that he "withdrew" his consent to the Court's complex case designation. It is unclear what, if any, effect such a withdrawal would carry. The Court found the case complex based on a number of factors, none of which change with the defendant's withdrawal of consent. The case is complex irrespective of the defendant's consent. To the extent the defendant wishes to challenge that designation on appeal, the Fourth Circuit would review the Court's legal conclusions *de novo* and its factual findings for clear error. *Jarrell*, 147 F.3d at 317; *Stoudenmire*, 74 F.3d at 63.

**C.    The current pandemic supported the Court's ends-of-justice finding under the Speedy Trial Act.**

As to the defendant's coronavirus-related challenges, it is unclear whether the defendant contests the sufficiency of the Court's explanation for setting a trial date past Labor Day or its underlying rationale. Either way, the argument fails. As to the adequacy of the Court's explanation, it was unquestionably thorough. The Court noted the difficulties of holding jury trials during the pandemic and its inability to schedule one before Labor Day. (Tr. of June 12, 2020 Status Conference at 10.) The Court specifically referenced the "multiple findings" in Chief Judge Davis' general orders concerning "the difficulty with setting up a safe jury trial in which both the participants in the trial and the jurors can safely sit for multiple hours and days". *Id.* at 10–11. And finally, the Court specifically referenced the Speedy Trial Act, noting that "[t]his is an exigent circumstance. The Speedy Trial Act has essentially been held in abeyance while this medical emergency exists[.]" *Id.* at 11.

With regards to the substance of the Court's rationale, it was fully justified in concluding that, given the exigencies created by the ongoing pandemic, trial in this matter could not commence until after Labor Day.

Courts have repeatedly upheld ends-of-justice continuances premised on unforeseen, natural or man-made disasters analogous to pandemics. For example, the Ninth Circuit upheld an ends-of-justice continuance precipitated by the 1981 eruption of Mount Saint Helens in *Furlow v. United States*, 644 F.2d 764 (9th Cir. 1981). In doing so, it stated:

> This Court is quick to pay homage to the Sixth Amendment to the Constitution of the United States and its implementation, The Speedy Trial Act. Except for the right of a fair trial before an impartial jury no mandate of our jurisprudence is more important. But the record here contains an acknowledgment of the appreciable difficulty expected with an incident/accident of earth-shaking effect, although the various impacts are not detailed.

*Id.* at 769–69. Similarly, in *United States v. Richman*, 600 F.2d 286 (1st Cir. 1979), the First Circuit

upheld an "ends of justice" continuance partially premised on a "paralyzing blizzard" that occurred

in Boston, Massachusetts in 1978. *Id.* at 294. In *United States v. Scott*, 245 Fed. App'x 391 (5th Cir.

2007), the Fifth Circuit upheld the use of an ends-of-justice continuance based in part on Hurricane

Katrina. *Id.* at 394. And, in the wake of Hurricane Maria, at least two district courts in Puerto Rico

utilized ends of justice continuances to adapt to the burgeoning crisis. *United States v. Sánchez-*

*Senda*, No. 2:17-cr-529, 2018 WL 1737615, at \*1 (D. P.R. 2018); *United States v. García-Báez*,

No. 16-cr-691, 2019 WL 2553621, at \*1 (D. P.R. 2019).

      Similarly, after the terrorist attacks of September 11, 2001, then-District Judge Lynch

explained that even *nunc pro tunc* continuances are permissible under the Speedy Trial Act in

times of public crisis:

> there is simply no question that the exclusion of time from September 11 to the
> present is justified in the interests of justice. The administration of justice in this
> District ground to a temporary halt as a result of acts of warfare against the United
> States that created a public emergency. The larger interests of justice in the
> District—not to mention supervening necessity—surely required suspending
> proceedings in this case.

*United States v. Correa*, 182 F. Supp. 2d 326, 329 (S.D.N.Y. 2001).

      In light of the current pandemic, courts have relied on the above-cited authority to grant

ends-of-justice continuances where appropriate. As one court recently put it:

> Many types of emergencies, including natural disasters and terrorist attacks, have
> been found to justify Speedy Trial Act continuances. The current emergency has
> resulted in an equal if not greater level of disruption. This disruption is
> demonstrated by the fact that on March 31, 2020, the only remaining active grand
> jury in the Southern District of New York failed to secure the quorum necessary to
> vote on indictments.

*United States v. Carillo-Villa*, — F. Supp. 3d —, 2020 WL 1644773, at \*3 (S.D.N.Y. Apr. 2,

2020). Citing *Furlow* (eruption of Mount St. Helens) and *Correa* (9/11 terrorist attacks), the court

in *Carillo-Villa* observed that "[t]he current emergency has resulted in an equal if not greater level

of disruption." *Id*; *see also United States v. Reyes Castillo*, No. 118-CR-92 (DAD), 2020 WL

2538378, at *1 (E.D. Cal. May 19, 2020) (citing *Furlow* and *Correa* and observing that "[t]he coronavirus is posing a similar, albeit more enduring, barrier to the prompt proceedings mandated by the statutory rules.").

These courts are correct. The concerns surrounding the resumption of jury trials during a time of pandemic far exceed the concerns at issue in the natural and man-made disaster cases cited above. Unlike those cases, the Court cannot simply rely on the passage of time to restore normalcy. The coronavirus is a less tangible, more potent, and more enduring obstacle than any hurricane or blizzard. It is also an equal opportunity virus, placing at risk all participants in the criminal trial process, including the defendant himself. *See United States v. Young*, No. 19-CR-496 (CMA), 2020 WL 3963715, at *2 (D. Colo. July 13, 2020) ("The heightened risk of exposure to COVID-19, both for Mr. Young and for everyone involved in the trial of Mr. Young's case, including the jurors, the lawyers, and court staff, outweighs the best interest of the public and the defendant in a speedy trial."). The number of obstacles to conducting a safe trial—where jurors, by necessity, need to closely gather and mingle—far exceed the concerns at issue in those case which upheld ends-of-justice continuances in the face of various unpredicted disasters. As one district court has recently put it:

> We are not faced with an epidemic, but rather we are in the midst of what has been officially declared to be a pandemic, which is a far more serious situation. The universality of COVID-19 means that every participant in the criminal justice process is at risk. Until that risk can be satisfactorily managed so as to reasonably provide for the public health considerations for all participants, including the defendant and his counsel, continuances necessitated by the pandemic are in the interest of justice and are excludable under the Speedy Trial Act.

*United States v. Diaz-Nivar*, No. 20-CR-38 (JD), 2020 WL 3848200, at *3 (D.N.H. July 8, 2020); *see also United States v. Lev*, No. MAG 17-3195, 2020 WL 2615477, at *3 (D.N.J. May 22, 2020) ("Just as certain valuable civil rights have been curtailed by the emergency pandemic-related quarantine directives of local and state officials, so too may the rights of litigants be affected by

Court Order for the purpose of ensuring the orderly administration of justice.").

In light of these circumstances, the Court acted properly in postponing the trial to avoid the negative consequences attendant to holding a jury trial. *See United States v. Reyes-Canales*, No. 17-CR-589 (JKB), 2020 WL 1955578, at *2 (D. Md. Apr. 23, 2020) ("[H]olding a jury trial with over forty-five witnesses, as well as interpreters, attorneys, and Court staff, in the midst of a pandemic would be a gross miscarriage of justice.").

Numerous courts have echoed these concerns in the wake of the COVID-19 pandemic, and "[a]lmost every court faced with the question of whether general COVID-19 considerations justify an ends-of-justice continuance and exclusion of time has arrived at the same answer: yes." *United States v. Smith*, — F. Supp. 3d —, 2020 WL 2541713, at *2 (E.D. Cal. May 19, 2020); *see also, e.g., United States v. Magana*, No. 4:19-CR-114, 2020 WL 2527041, at *1 (D. Utah May 18, 2020) ("[B]ased on the ongoing nature of the COVID-19 outbreak in the District, the effect of national and local public health recommendations and directives (including restrictions on travel and the availability of hotel accommodations), and the findings and conclusions in Chief Judge Shelby's General Orders …, it is necessary and appropriate to continue trial in this case and exclude time under the Speedy Trial Act."); *United States v. Guadron-Diaz*, No. CR19-0230EMC, 2020 WL 1845315, at *1 (N.D. Cal. Apr. 10, 2020) ("COVID-19 is a global pandemic. To avoid the spread of COVID-19, the state of California is currently ordered to shelter in place.... An exclusion of time is therefore appropriate in this case because: The nation's public health interest in stemming the spread of COVID-19 outweighs the interest of the public and the defendant in a speedy trial." (internal quotation marks and citation omitted)); *United States v. McKnight*, No. CR18-16 TSZ, 2020 WL 1872412, at *4 (W.D. Wash. Apr. 15, 2020) ("[A] continuance of the trial in this matter is necessitated by the Court's inability to obtain an adequate spectrum of jurors and the effect of

21

the current public health recommendations on the availability of witnesses, counsel, and Court staff to be present in the courtroom, and the ends of justice served by such continuance outweigh the best interest of the public in, and defendant's right to, a speedy trial.").[6]

At the moment, the COVID-19 pandemic makes it nearly impossible to safely conduct a jury trial. As Chief Judge Davis noted in General Order No. 2020-16, this difficulty stems not just from the dangers surrounding empaneling a jury required to operate in close quarters for lengthy periods of time, but also from the difficulty of ensuring that such a jury would be able to maintain focus, given the current environment, on the presentation of evidence. Ensuring a healthy and focused jury inheres to the benefit of all parties. Moreover, while the length of the continuance in this case exceeds those in the natural and man-made disaster cases cited above, each ends-of-justice continuance will be proportional to its cause. Those courts granting continuances after volcanic eruptions, blizzards, hurricanes, and terrorist attacks were eventually able to resume operations within a finite period of time. Here, however, the coronavirus is a more persistent, widespread, and difficult-to-manage factor, rendering resumption of jury trials far more problematic.

These factors more than justify the Court's decision to set a trial date after Labor Day and

---

[6] *See also United States v. Chivers*, No. 1:19-cv-119, 2020 WL 1438343, at *12 (S.D. Ohio Mar. 23, 2020); *United States v. Brown*, No. 2:19-cr-135-RAH, 2020 WL 1496552, at *1 (M.D. Ala. Mar. 23, 2020); *United States v. Peggs*, No. 1:19-CR-00304-2, 2020 WL 1495413, at *1 (S.D. W.Va. Mar. 23, 2020). Relatedly, the Ninth Circuit Judicial Council recently approved three judicial emergency declarations under 18 U.S.C. § 3174, premised in part on the disruption to court operations wrought by the COVID-19 pandemic. In doing so, the Judicial Council suspended the time limits required by § 3161(c) for up to one year. *See In re Approval of Judicial Emergency Declared in E. Dist. of California*, 956 F.3d 1175 (9th Cir. 2020); *In re Approval of Judicial Emergency Declared in Cent. Dist. of California*, 955 F.3d 1140 (9th Cir. 2020); *In re Approval of the Judicial Emergency Declared in the S. Dist. of California*, 955 F.3d 1135 (9th Cir. 2020).

fully satisfy § 3161(h)(7)(A)'s criteria. For these reasons, the Court should deny the defendant's motion to dismiss.

The government makes one additional point. Although the Court's June 12, 2020 explanation for its scheduling decision was sufficient, the Court may always make additional findings for the avoidance of doubt and to protect the record on appeal. *See Henry*, 538 F.3d at 304 ("[T]he court is only required to state its findings on the record by the time it rules on the defendant's motion to dismiss"); *see also Zedner*, 547 U.S. at 507 (court "must be put on the record by the time a district court rules on a defendant's motion to dismiss under § 3162(a)(2)."). In this unusual context, some courts have chosen to "ratify" or "adopt" the general orders of the court while making ends of justice findings. *See, e.g., United States v. Merrick*, No. 20-CR-09-JD, 2020 WL 3887779, at *3 (D.N.H. July 8, 2020) ("The court ratifies and confirms the administrative orders referred to herein and adopts and applies them to this case."); *United States v. Liverman*, 3:20cr63, ECF No. 14 at 6 (E.D. Va. July 2, 2020) ("The Court ADOPTS the findings in General Order Nos. 2020-06, 2020-16 and 2020-19. In light of Chief Judge Davis' findings in [these orders], the continued prevalence of COVID-19 in Virginia, and the current outbreak projections, the Court FINDS that the ends of justice served by continuing the trial during this period outweigh the best interest of the public and defendant in a speedy trial[.]"). There would be nothing objectionable about the Court making additional fact findings about either the pandemic or the complexity of this case in resolving the pending motion.

### III.   Even if postponement of the defendant's trial somehow violated the Speedy Trial Act, any dismissal should be without prejudice.

Under the Speedy Trial Act, "[i]f a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2). This Court, however, "may choose

whether to dismiss with or without prejudice." *Henry*, 538 F.3d at 304 (citing *Zedner*, 547 U.S. at 499)); *United States v. Thomas*, 705 F.2d 709, 710 (4th Cir. 1983) ("The Act requires dismissal of untimely indictments, but leaves to the district court's discretion the decision whether to dismiss with or without prejudice.").[7]

In deciding whether or not to dismiss a case with prejudice, "the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." § 3162(a)(2). In considering these factors, the Court must make factual findings or consider evidence in the record as pertinent to the relevant statutory factors. *United States v. Taylor*, 487 U.S. 326, 343–44 (1988).

The defendant provides no argument as to remedy in this case, nor does he mount a case for dismissal with prejudice. Nevertheless, because the statutory factors weigh in favor of the government, should the Court dismiss the indictment, it should do so without prejudice.

The defendant's offense is undoubtedly serious. He is charged with two drug-trafficking conspiracies and a money-laundering conspiracy. Both drug-conspiracy counts carry mandatory minimum sentences of 10 years and the money-laundering charge carries a statutory maximum of 20 years. Both the nature of the charges and their substantial penalties are indicative of seriousness for purposes of prejudice analysis. *See United States v. Peterson*, 945 F.3d 144, 152 (4th Cir. 2019) (examining the nature of the charged conduct and the potential sentence and holding that offense was "serious" where, among other things, defendant "face[d] a decades-long sentence for his participation in the nationwide drug trafficking conspiracy"); *see also United States v. Robinson*,

---

[7] As a result, the Act also permits the government to re-indict on the same offense. *See United States v. Soriano-Jarquin*, 492 F.3d 495, 503 (4th Cir. 2007).

24

389 F.3d 582, 588 (6th Cir. 2004) ("[T]he length of the sentence, [and] the offenses charged against Robinson were serious and favored dismissal without prejudice."). Given the seriousness of the offense, dismissal with prejudice would be unjustified. *See Peterson*, 945 F.3d at 152 ("[T]he seriousness of the offense[] cuts against a dismissal with prejudice.").

As to "the facts and circumstances of the case which led to the dismissal," the novel coronavirus is the fault of neither party. And, because "matters outside the control of the parties resulted in the delay[,]" this "factor does not weigh heavily against the government." *United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003) (reason for delay did not weigh heavily against government where reason where "[an] unusual stipulated bench trial motion, the September 11th tragedy, and the court's scheduling difficulties due to illness"). As one court recently put it in assessing a constitutional speedy-trial challenge: "It is worth noting, however, that the other *Barker* [*v. Wingo*, 407 U.S. 514 (1972)] factors also work against Mr. Briggs here. The reason for the Government's delay is a valid, neutral reason: a global pandemic. The Government has not done anything wrong, and the circumstances preventing an indictment are beyond its control." *United States v. Briggs*, No. 2:20-MJ-410-JDW, 2020 WL 1939720, at *2 (E.D. Pa. Apr. 22, 2020).

There is also no indication—or argument—that the government has been negligent in pursuing or prosecuting this case. This factor therefore weighs in favor of dismissal without prejudice. *See Taylor*, 487 U.S. at 339 ("The District Court did not find that the Government acted in bad faith with respect to respondent; neither did the court discover any pattern of neglect by the local United States Attorney"); *see also United States v. McLendon*, 944 F.3d 255, 264 (D.C. Cir. 2019) ("McLendon does not direct us to anything in the record that reflects a pattern of neglect or intentional misconduct on behalf of the government. ... the government's failure to comply with the Act in this case was akin to an isolated unwitting violation, which supports a dismissal without

prejudice."); *United States v. Myers*, 666 F.3d 402, 406 (6th Cir. 2012) (affirming decision to dismiss indictment without prejudice, in part, where there was "no evidence of bad faith on the part of the Government in the delays." (internal quotation marks omitted)); *United States v. Abdush-Shakur*, 465 F.3d 458, 463 (10th Cir. 2006) ("There is no indication the government was dilatory or neglectful in its prosecution of Abdush-Shakur, or that it otherwise acted in bad faith").

Moreover, the defendant bears some responsibility for the delay in this case. After all, he rejected the Court's offer to try the case in December 2020 or January 2021. *Accord McLendon*, 944 F.3d at 265 (concluding that, where "the record reveals that the defendant's conduct was a major cause of the delay," this factor weighs in favor of dismissal without prejudice).

As to the administration of justice, any Speedy Trial Act violation would not warrant dismissal with prejudice. There no evidence that the government was intentionally or deliberately indifferent to the circumstances presented here. Of course, as noted above, the reasons for the post-Labor Day trial date are entirely out of the government's control. *Accord Dunn*, 345 F.3d at 1296 ("[M]atters outside the control of the parties resulted in the delay"). As such, there is no bad conduct to deter and dismissal with prejudice would hardly solve the thorny and ever-evolving problem of conducting jury trials during a pandemic. *See Abdush-Shakur*, 465 F.3d at 463 ("Where the delay caused by the government is unintentional and the district court takes it upon itself to share in the blame for the delay, the administration of justice is not served by dismissal with prejudice.").

What's more, given the seriousness of the crimes charged in the indictment, dismissal with prejudice would result in the defendant earning an unjust windfall. *See Peterson*, 945 F.3d at 153 ("The district court observed, and we agree, that the federal government has a weighty interest in resolving on their merits crimes as serious as those before us; the corrosive and devastating effects

of methamphetamine on society compel as much. Plainly, this interest in merits resolutions bears upon the administration of justice." (internal quotation marks and citation omitted)).

Nor has the defendant articulated any prejudice in this case. "Although not dispositive, "'the presence or absence of prejudice to the defendant' is also 'relevant for a district court's consideration,' and may be considered in conjunction with the third [§ 3162(a)(2)] factor." *United States v. Thomas*, 305 F. App'x 960, 963 (4th Cir. 2009) (quoting *Taylor*, 487 U.S. at 334, 341). The defendant must "make a particularized showing of prejudice which addresses the interests the speedy trial right was designed to protect." *United States v. Hicks*, 779 F.3d 1163, 1169 (10th Cir. 2015). The defendant has provided no argument on this score. *Cf. United States v. Jones*, 213 F.3d 1253, 1258 (10th Cir. 2000) ("[T]he administration of justice would not be harmed by dismissal without prejudice because of a lack of actual prejudice occasioned by the delay").

On balance, dismissal with prejudice would be inappropriate. As the Tenth Circuit has noted, "[t]he fact that a violation has taken place is not alone sufficient for the application of the more severe sanction of dismissal with prejudice, which should be reserved for more egregious violations. Dismissal with prejudice is a strong message indeed, and one ill-suited to an isolated and inadvertent violation." *United States v. Cano-Silva*, 402 F.3d 1031, 1035 (10th Cir. 2005). Given that "there is no evidence that a delay in the trial date was for the government to obtain a tactical advantage," a prejudice-based dismissal would serve no purpose in the present case. *United States v. Jones*, 887 F.2d 492, 495 (4th Cir. 1989).

*       *       *

Both judicial and executive branch officials in this district are hard at work trying to solve the predicament of conducting jury trials during a pandemic. As General Order No. 2020-19 explained, the Court has "devoted countless hours working toward planning and modifying our

27

physical spaces to allow for the safe resumption of jury trials[.]" *See In re Court Operations Under the Exigent Circumstances Created by Outbreak of Coronavirus Disease 2019 (COVID-19)*, No. 2:20MC7, 2020 WL 3545671, at *5 (E.D. Va. June 30, 2020); *see also id.* at *5–8 (detailing the Court's exhaustive efforts to address the problem as well as its receipt of input from numerous stakeholders, including "the U.S. Attorney's Office, Federal Public Defender's Office, and the Court's CJA Panel Attorney District Representative," as well as its consideration of relevant reports from the National Association of Criminal Defense Lawyers and the Jury Subgroup of the Administrative Office of the United States Courts). In fact, Chief Judge Davis' most recent order explained that "[i]n anticipation of such planned resumption of criminal jury trials," the Court had adopted a modified jury summons packet in to account for coronavirus-related concerns. *See* Gen. Order No. 2020-20 at 1–2.[8]

For the time being however, and despite the District's best efforts, resuming jury trials is fraught with difficulty. Just as "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members[,]" *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 27 (1905), so too the Court has the right—or rather the obligation—to protect those parties appearing before it. While the Speedy Trial right is one of our nation's fundamental rights, it "does not include liberty to expose the community ... to communicable disease or the latter to ill health or death." *Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944). The health and safety concerns created by the coronavirus pandemic more than outweigh the interests of the defendant and public in a speedy trial. Delaying trial in this matter therefore serves the ends of justice.

---

[8] General Order No. 2020-20 is available at
http://www.vaed.uscourts.gov/notices/Gen%20Order%202020-20%20Modified%20Jury%20Summons%20Packet%20(7.7.2020).pdf

## Conclusion

For the reason explained above, the Court should deny the defendant's motion to dismiss. Should the Court disagree, dismissal without prejudice is the appropriate remedy under these circumstances.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: _____

David Peters
Joseph Attias
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Office:   (703) 299-3700
Fax:      (703) 299-3980
Email:    David.Peters@usdoj.gov

**Certificate of Service**

I certify that on July 22, 2020, I filed electronically the foregoing with the Clerk of Court

using the CM/ECF system, which will serve all counsel of record.

By: _____

David Peters
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office:   (703) 299-3700
Fax:      (703) 299-3980
Email:    David.Peters@usdoj.gov

30