RECEIVED

IN THE UNITED STATES DISTRICT COURT FOR

THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

2020 AUG -3 ᑭ 4: 39

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

|  |  |  |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| v. | ) | Crim. No. 19cr334 |
| | ) | Hon. Leonie Brinkema |
| XIZHI LI, | ) | Under Seal |
| Defendant. | ) | |
| | ) | |

FILED

AUG -3 2020

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO FARMER MOTION

The Government's Opposition Brief ("OB") serially mischaracterizes the applicable forfeiture law in an effort to defeat Defendant's pending motion for a *Farmer*[1] hearing on pretrial forfeiture relief in order to preserve Defendant's vested, currently-needed, Sixth Amendment right to counsel. In particular, the Government raises the very concerns rejected by the Supreme Court as insufficient to override a defendant's Sixth Amendment rights pretrial—the Government's desire to avoid "premature disclosure" of its evidence , and its desire to preclude any pretrial inquiry into forfeiture based upon the role of the grand jury as to the forfeiture allegations of an indictment. (OB, at 7). But this Court, not the grand jury, is the guardian of Sixth Amendment rights, and this Court has the duty to protect them. In this case that means holding a pretrial hearing into the propriety of the Government's seizure of Defendant's property for purposes of avoiding a violation of his Sixth Amendment rights.

---

[1] *United States v. Farmer*, 274 F.3d 800 (4th Cir. 2001).

1

Introduction

It is no accident that the Government's brief cites largely lower court rulings preceding the Supreme Court's forfeiture opinion in *Kaley v. United States*, 571 U.S. 320 (2014). (OB, at 6).[2] Starting with *Kaley* in 2014, traveling through *Luis v. United States* in 2016[3], and ending with *Honeycutt v. United States* in 2017,[4] the Supreme Court substantially narrowed federal criminal forfeitures to the limited version actually enacted by Congress beginning in 1970 with the RICO statute. This trilogy of Supreme Court decisions markedly undermines the Government's claim to forfeiture of Appellant's assets and, by extension, discredits the Government's machinations to deprive Appellant of the use of his own assets for his own defense.

In particular, a unanimous court in *Honeycutt* made clear,[5] in accordance with the statutory textual language, structure, and history of the forfeiture laws,[6] that there are no common law forfeitures. Forfeitures are restricted to statutorily authorized property.

Over the last decade, the Supreme Court has reaffirmed the government does, in fact, labor under the proof burden of tracing property both to the offense and to a defendant (contrary

---

[2] The Government is similarly cavalier with its factual representations. Defendant did not simply "arrive[] in the United States from Mexico." (OB at 2.) In fact, he was captured in Merida, Mexico by officers of the Mexican National Police who personally delivered him to the DEA in Houston, Texas. Further, the Government is incorrect when it asserts that "the Defendant has retained three private attorneys... " (OB, at 7.) In fact, he has retained none. Finally, Defendant has not "implicitly acknowledged" any financial resources. (OB, at 7). In fact, he makes no such acknowledgement, implicitly or expressly.

[3] *Luis v. United States*, 136 S. Ct. 1083, 1096 (2016).

[4] *Honeycutt v. United States*, 137 S. Ct. 1626 (2017).

[5] Justice Gorsuch did not participate in the case.

[6] *Honeycutt*, 137 S. Ct. at 1630, 1634.

2

to circuit court precedent dating back to the 1980s),[7] by holding that: (1) "'forfeiture applies only to specific assets'" because only tainted property is statutorily subject to criminal forfeiture, a forfeiture scope limitation Congress carried over from civil forfeitures,[8] (2) it is the government's burden to trace the proscribed taint relationship directly to specific property,[9] and (3) this precludes judge-made attributed forfeiture liability, eliminating any direct forfeiture liability for legitimate property, cabining a defendant's forfeiture liability to his own tainted property.[10]

The middle opinion—*Luis*—is especially important to this motion (although the Government claims it is immaterial, OB at 3 n.1) because *Luis* holds that, pretrial, a defendant has a vested Sixth Amendment right to use his own assets to pay for his criminal defense counsel. But the first opinion—*Kaley*—is also relevant also because it held that: (i) a pretrial evidentiary hearing is required on the forfeitability of assets seized by the Government or a court; (ii) at which a court may not second-guess a grand jury's finding of probable guilt, but it can determine whether the Government has established a sufficient nexus between the offense and the seized property, because this tracing inquiry is not within the competence of a grand jury. As the *Kaley* opinion explained:

---

[7] *See United States v. Conner*, 752 F.2d 566, 577 (11th Cir. 1985). To be sure, money judgments are described in Fed. R. Crim. P. 32.2(a), and that Rule indicates that judges make such determinations, but the drafting Committee authors were careful to point out that they did not intend by its inclusion to thereby authorize use of such judgments, just to recognize that some courts had done so. 2000 Adv. Cmtee Notes ("The Committee takes no position on the correctness of those rulings.").

[8] *Honeycutt*, 137 S. Ct. at 1633 (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014) (holding that court may conduct pretrial hearing into whether "the property at issue has the requisite connection to that crime," *i.e.*, taint, to exclude from restraints)).

[9] *Luis v. United States*, 136 S.Ct. 1083, 1096 (2016) (directing courts to use of tracing rules).

[10] *Honeycutt*, 137 S. Ct. at 1634-35 ("§ 853 maintains traditional *in rem* forfeiture's focus on tainted property unless one of the preconditions of § 853(p) exists").

3

> The dissent argues that the same is true when a judge hears evidence on whether frozen assets are traceable to a crime, because the allegation also appears in the indictment. But the tracing of assets is a technical matter far removed from the grand jury's core competence and traditional function—to determine whether there is probable cause to think the defendant committed a crime. And a judge's finding that assets are not traceable to the crime charged in no way casts doubt on the prosecution itself. So that determination dos not similarly undermine the grand jury or create internal contradictions within the criminal justice system.

*Kaley*, 571 U.S. at 331 n.9 (2014).[11]

Because the grand jury lacks competence to make tracing findings, the Opposition Brief's insistence that Defendant is not entitled to a hearing unless he can disprove the grand jury's probable cause determination as to property in the Forfeiture Notice (OB, at 5-6), is simply incorrect as a matter of law post-*Kaley*. OB, at 6 (claiming that defendant bears burden of showing that the "grand jury erred in finding probable cause to believe that the property was subject to forfeiture.").[12]

The final opinion in this trilogy—*Honeycutt*—invalidated a forfeiture money judgment predicated upon a defendant's attributed liability for drug monies obtained by his co-defendant, co-conspirator brother. Critical to the *Honeycutt* opinion's reasoning was its recognition of the binary classification of a defendant's property by Congress—it is either tainted property (subject

---

[11] The Opposition Brief cites the *Kaley* dissenting opinion of Chief Justice Roberts —in which he advocates entitlement to a pretrial hearing regardless of taint—as somehow aiding the Government here. OB, at 5. He would later vote in *Luis* to make clear that a defendant has a pretrial Sixth Amendment right to use untainted assets for his counsel of choice.

[12] No such burden exists under *Kaley,* but is especially be misplaced here, where the indictment provides only a plug number of $30 million for undisclosed global conspirators in defiance of *Honeycutt* and its reaffirmation of the Government's tracing burden in criminal forfeitures.

only to § 853(a)) or untainted property (subject only to § 853(p)).[13] Untainted property is free from any forfeiture restrictions pre-conviction - thereby making it available for a criminal defense. Untainted property is also free from forfeiture post-conviction, absent satisfaction of one of the five preconditions of § 853(p)(1)(A)-(E) due to a proven "act or omission" of the defendant rendering tainted property unavailable for forfeiture.

As even the Solicitor General admitted to the Supreme Court thereafter, this means that a forfeiture money judgment cannot be used to forfeit a defendant's untainted property post-conviction.[14] The Fourth Circuit has acknowledged the import of these Supreme Court rulings as overruling its long-held precedent that untainted property can be restrained pretrial. *United States v. Chamberlain*, 868 F.3d 290, 291 (4th Cir. 2017) (*en banc*) (overruling *In re Billman*, 915 F.2d 916 (4th Cir. 1990), and citing *Luis* and Solicitor General Brief in *Honeycutt*)

This means that, under the criminal forfeiture laws, untainted property cannot be seized pretrial or forfeited at all (except post-conviction under § 853(p)). Pretrial, *Luis* dictates that untainted assets must be made available to honor a defendant's Sixth Amendment right to muster a criminal defense. The Fourth Circuit's *Farmer* opinion of 2001, of course, did not have the benefit of this recent Supreme Court guidance, but it managed to navigate the Due Process

---

[13] *Honeycutt*, 137 S. Ct. at 1634 ("Permitting the Government to force other co-conspirators to turn over untainted substitute property would allow the Government to circumvent Congress' carefully constructed statutory scheme, which permits forfeiture of substitute property only when the requirements of §§ 853(p) and (a) are satisfied. There is no basis to read such an end run into the statute.")

[14] See Solicitor General brief in *Henry Lo v. United States*, No. 16-8327, at 17-18 ("[S]ection 853(p)'s substitute-assets provision is 'the sole provision of [Section] 853 that permits the Government to confiscate property untainted by the crime,'" (quoting *Honeycutt*, 137 S. Ct. at 1633-34). After *Honeycutt*, "a forfeiture money judgment does not supply independent authority for seizing a defendant's untainted property").

thicket posed by the forfeiture laws to a degree better than most, following the tri-partite constitutional standard of *Mathews v. Eldridge*, 424 U.S. 319 (1976).

In *Farmer*, the Government deployed the same double-barreled approach used in this case—simultaneously claiming a defendant's property to be subject to civil forfeiture in one case, and criminal forfeiture in another. *Farmer*, 273 F.3d at 804. Anticipating *Kaley*, the *Farmer* opinion held that, in those circumstances, a defendant has a due process right to a pretrial hearing to challenge the seizure and restraint of his property needed for a criminal defense. The only aspects of this ruling that did not survive *Kaley* and *Luis*, is the required showing of need, along with any question but that a pretrial hearing is constitutionally mandated on taint issues to protect Sixth Amendment rights. *Kaley* established a Fifth Amendment due process pretrial hearing right on tracing without more, and *Luis* confirmed that pretrial the Sixth Amendment provides a parallel hearing right to enforce the right to counsel of choice.[15] That is precisely what Defendant's motion seeks here. Hence, the prosecution's invocation of standards pre-dating this trilogy, which it labels the "*Jones-Farmer* requirements"[16] have been eclipsed by this matrix of Supreme Court precedent.

Here, the Government is proceeding with not two, but three barrels.

First, the Government seized Defendant's money from his Florida bank account ($617K), and spirited that *res* to Tennessee for purposes of initiating a civil forfeiture action.

---

[15] The Opposition Brief's cite to the dissenting opinion of Chief Justice Roberts' *Kaley* dissent makes this point.

[16] *United States v. Jones*, 160 F.3d 641 (10th Cir. 1998); *United States v. Famer*, 274 F.3d 800 (4th Cir. 2001).

Second, the Government physically seized (i.e., kidnapped) Defendant from Mexico and flew him to this District in order to answer an Indictment listing this same money (the $617K) as criminally forfeitable.

Third, the Government seeks a forfeiture money judgment for $30 million, representing the alleged proceeds of all monies obtained by an ambiguously- described international conspiracy that allegedly included Defendant, his two co-defendants, and numerous unnamed other persons around the globe.  Several problems flow from this allegation.  Initially, while Defendant disputes that *Farmer's* need showing has survived the Supreme Court trilogy, the Indictment single-handedly establishes need because the Defendant is not remotely in a position to forfeit $30 million *and* pay for criminal defense counsel.  The Government does not even dispute this, although it vaguely describes engaging in an investigation of "foreign businesses" and foreign property owned by the Defendant.  OB, at 7.

Further, this proposed  $30 million forfeiture judgment is undifferentiated as to the Defendant, his co-defendants, and all other unidentified members of the conspiracy.  *Honeycutt* squarely holds that conspiracy liability (i.e., "*Pinkerton*") and liability attributed between co-defendants, is not statutorily authorized. *Honeycutt*, 137 S. Ct. at 1634 ("Not so.").  But the Indictment alleges that the $30 million "represent[s] proceeds the defendants obtained in the course of the drug conspiracies. . ."  This is simply a violation of *Honeycutt*.  Both the proposed $30 million forfeiture judgment, and its $617K component part, are being used by the prosecution to impoverish the Defendant prior to trial to preclude his using his untainted assets for his criminal defense.

No matter how many barrels the Government deploys, it has triggered the Defendant's Sixth Amendment rights that vested with the Indictment, and created his needs by prosecuting him for $30 million, as well as his Due Process rights, through the manner it chose to proceed.

## A. *Honeycutt Applies to All Criminal Forfeitures, Including Farmer Hearings.*

The Government claims that *Honeycutt* does not apply to *Farmer* hearings, and suggests that this result is justified because the forfeiture in this case is of "involved in" property under 18 U.S.C. § 982(a)(1). OB, at 9. This misreads and substantially undercuts both *Farmer* and the Supreme Court trilogy. *Farmer* analyzed the constitutional right to a pretrial hearing as a matter of Due Process and Sixth Amendment rights, as later did *Kaley* and *Luis*. Consequently, the constitutional rulings of this Court and the Supreme Court could not be overridden by Congress. But Congress did not remotely do so when it enacted § 982(a)(1) more than a decade prior to *Farmer*.

Even more disturbing is the Government's argument that *Honeycutt*—which comprehensively reconciled the text, structure, and entire history of criminal forfeiture laws since their introduction in 1970—is somehow inapplicable to the criminal forfeiture law in this case. *Honeycutt* addressed the forfeiture liability *vel non* of co-defendants and co-conspirators under 21 U.S.C. § 853, holding that conspiracy liability, and joint and several liability, are statutorily unauthorized. In doing so, *Honeycutt* construed the introduction of criminal forfeiture to the law in 1970 as a merger and adoption of the limitations of civil forfeiture (taint) precedent (codified in § 853(a)), which was followed by a narrow statutory departure in 1986 with the enactment of substitute assets forfeiture (§ 853(p) authorizing forfeiture of untainted assets - but only with five preconditions. *Honeycutt*, 137 S. Ct. at 1635 ("But as is clear from its

8

text and structure, § 853 maintains traditional *in rem* forfeiture's focus on tainted property unless one of the preconditions of § 853(p) exists.").

Given the *Honeycutt* opinion's recognition of the overall intent of Congress in repeated statutory enactments over time to divide *all* property into tainted property (§ 853(a)) versus untainted property (§ 853(p), the Government's claim in this case that *Honeycutt* does not apply to the property it seeks to forfeit is nonsensical, and provides no support for its claim of statutory authority.

Nor can the Government escape the forfeiture statutory regime enacted by Congress and carefully described by *Honeycutt* by claiming that forfeiture of asserts "involved in" the commission of a crime under 18 U.S.C. § 982(a)(1) makes *Honeycutt* "not apply at all." OB, at 9. First, Section 982(a)(1)'s reference to property "involved in" a defendant's offense (here, money laundering) is not boundless. Courts have limited money laundering forfeitures under § 982(a)(1) into three categories: (i) the money actually laundered; (ii) any commissions on that transaction; and (iii) property used to facilitate the laundering transaction. *United States v. Bornfield*, 145 F.3d 1123, 1135 (10th Cir. 1998). Nowhere does the Indictment identify the $617K as falling under any of these three property categories. The grand jury lacks competence to make tracing findings and it left no evidence that it attempted to do so.

More important, Congress expressly incorporated into § 982(b)(1) the provisions of 21 U.S.C. § 853, which comprise the substantive forfeiture limitations of § 853(a) as to tainted property and of § 853(p) as to untainted property. Insisting that neither § 982(a)(1) nor *Honeycutt* proscribes the forfeiture of property "involved in" the commission of crime, the Government would now have this Court believe that Congress intended greater latitude in the forfeiture of mere instrumentalities of crime than it did for the fruits of crime. This would

9

simply repeat the interpretive error identified and rejected by *Honeycutt*—permitting an "end run" of the statutory language, structure, and history of forfeiture law. *Honeycutt*, 137 S. Ct. at 1634 ("There is no basis to read such an end run into the statute.")

Moreover, the Government's legal position is inconsistent with, if not flatly contradicted by, the Solicitor General's recent representation to the Supreme Court in *United State v. Peithman*, 140 S .Ct. 340 (2019) (Sotomayor, J., dissenting from denial of certiorari).   In *Peithman*, the Supreme Court was asked to resolve a circuit conflict over whether the "involved in" language of the civil forfeiture provisions of 18 U.S.C. § 981(a)(1) were subject to *Honeycutt's* prohibition on joint and several forfeiture liability.   In her dissent from denial of review over the  position of the 8th Circuit refusing to apply *Honeycutt* to the civil forfeiture "involved in" forfeiture language of § 981(a)(1), Justice Sotomayor noted that section 981 "is worded almost identically to 21 U.S.C. section 853(a)(1)," and that "the Government now concedes that the rationale of *Honeycutt* applies equally to section 981(a)(1)(C) as it does to section 853(a)(1)."  According to Justice Sotomayor:

> The Government now concedes error. According to the Government, there is no 'distinguishing 18 U.S.C. 981 from 21 U.S.C. 853 for purposes of joint and several liability.' Brief in Opposition 6; see also *id.,* at 10 ('[T]he government has agreed that *Honeycutt*'s reasoning applies to Section 981(a)(1)(C)').

140 S. Ct. at 340.

The Government's concession to the Supreme Court in *Peithman* should apply equally to the language of the corresponding criminal forfeiture language of section 982(a)(1) which is identical to the language in section 981(a)(1).  The Government here, however, dances around this inconvenient fact – first, in direct contravention of its *Peithman* concession, citing to Judge

10

Ellis' opinion in *United States v. Miller*, 2019 WL 6792762 (E.D. Va. December 12, 2019), that *Honeycutt* does not apply to Section 982, then disavowing that ruling in a footnote, but straining to claim that *Miller* still holds for subsection 982(b)(2). OB, at 9 n. 4. Beyond the lack of authority – or logic – for the Government's position that *Honeycutt* should not apply to subsection 982(b)(2), this subsection appears nowhere in the indictment. There is no legal basis in the indictment to make such a claim, reinforcing the need for a hearing after the Government defends its actions on uncharged forfeiture charges.

The Government's invocation of the recent post-judgment district court opinion in *United States v. Kenner*, 2020 WL 11486762 (E.D.N.Y. Dec. 12, 2019), that joint and several forfeiture liability was available notwithstanding *Honeycutt* under 18 U.S.C. § 982 is likewise unavailing, for largely the same reasons that convinced the Solicitor General. This ruling is wrong because *Honeycutt* holistically construed the language of § 853 which is itself made expressly applicable to § 982(a)(1) by operation of the express terms of § 982(b)(1). The *Kenner* opinion erroneously attempts to avoid this express textual rejection of its position by claiming that § 982(b)(1) only incorporated the "substitute asset procedures" of § 853. *Id.* at *11.

But the actual text of § 982(b)(1), as originally enacted, flatly refutes this by mandating that the "forfeiture of property under this section. . . *shall be governed* by the provisions of section 413 (other than subsection (d) of that subsection) of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. section 853))." (emphasis added). In other words, the *only* subsection of section 853 *not* incorporated into § 982(a)(1) is subsection (d) relating to rebuttable presumptions (not invoked here).[17] Accordingly, the plain text of §

---

[17] Indeed, when Congress later enacted the Civil Forfeiture Reform Act in 2000 to permit civil forfeitures in criminal forfeiture proceedings, it limited the incorporation therein to the "procedures in section 413 of the

982(b)(1) demonstrates without doubt that Congress intended that all other provisions of section 853 apply equally to section 982(a) forfeitures, making *Honeycutt's* analysis of this statutory regime plainly applicable.

This textual symmetry is further confirmed by Justice Sotomoyor's observation that the language of § 981 "is worded almost identically to 21 U.S.C. section 853(a)(1)." *Peithman*, 140 S. Ct. at 340 (Sotomayor, J., dissenting from denial of certiorari).

Likewise, the consistent judicial interpretation of the scope of "involved in" criminal forfeitures under § 982 for money laundering offenses closely tracks the taint descriptions embodied in § 853(a)—the corpus of laundered funds, related commissions, and facilitation property—with these categories in turn tracking the taint language and limitations of § 853(a). *Bornfield*, 145 F.3d at 1135 (cited and followed in *United States v. Miller*, 911 F.3d 229, 233 n.4 (4th Cir. 2018)).

In fact, § 853(a)(1)'s textual focus upon proceeds "obtained" by the individual defendant is paralleled in § 853(a)(2)'s textual focus limiting facilitation property forfeitures to *"the person's property* used, or intended to be used . . .to commit or to facilitate the commission of such violation., *i.e.*, the defendant's property. Again, as *Honeycutt* holds, a defendant is simply not responsible in forfeiture (directly or in substitution) for property obtained or used by others, whether they be co-conspirators, co-defendants, or brothers.

Similarly, both *Miller* and *Kenner* are distinguishable because they involved post-conviction forfeiture proceedings in which both the jury and the judge found that the defendant

---

Controlled Substances Act (21 U.S.C. 853)," demonstrating that Congress knew how to adopt *only* the procedural provisions of § 853, and it did not do so in 18 U.S.C. § 982(b)(1).

obtained the unlawful proceeds, as *Honeycutt* requires. There are no jury findings here, and no

pretrial entitlement to seize Defendant's untainted assets needed for his defense.

### Conclusion

The Government has indulged a sleight of hand to deprive Defendant of his right to due

process and of his Sixth Amendment right to counsel - and now asks this Court to join in its

subterfuge.

Civil forfeiture is resolutely non-punitive, as intended by Congress. *United States v.*

*Usury*, 518 U.S. 267, 290 (1996); *Austin v. United States*, 509 U.S. 602, 617 (1993). Yet the

Government has used a civil forfeiture action before a sister court to punish Defendant in this

case – forfeiting the very funds, the forfeiture of which was expressly described in the indictment

as part of the punishment sought by the Government against Defendant. The Government

orchestrated this punishment by securing a default forfeiture judgment from the sister court while

Defendant languished in confinement here – without notifying him of the pending civil forfeiture

or the Government's subsequent default application. It bears noting that criminal forfeiture

actions typically include an order restraining the *rem* to be forfeited. No such order was secured

here – presumably because the Government well knew the funds had already been seized in the

parallel proceeding – yet took no measure to see Defendant was made aware of it in this case.

Now the Government claims that this Court has no jurisdiction to remedy the denial of

Defendant's rights (OB at 4) – while it tells the Fourth Circuit that it also lacks jurisdiction to

address this Court's dismissal of the forfeiture count as to the $617K. (United States Motion to

Dismiss for Lack of Jurisdiction, USCA4 Appeal 20-4346, Doc. 13.)

This Court does not require a reversal of the dismissal or any resolution at all of Defendant's appeal of same in order to grant the relief Defendant seeks. (OB at 4, n.2.)  The *rem* in question resides now in the United States Treasury and this Court is fully able to order its disgorgement if justified  Funds remitted to the Treasury pursuant to a civil forfeiture order which was later appealed "could be disgorged if petitioner is adjudged to be their rightful owner." *Republic National Bank of Miami v. United States*, 113 S. Ct. 554, 561 (1992).  This Court's purview over the Treasury funds at issue is not diminished simply because the forfeiture occurred before a sister court.

For the foregoing reasons, this Court should schedule a *Farmer* hearing to address the Government's seizure of assets that should be used to satisfy Defendant's Sixth Amendment rights.

Respectfully submitted,

XIZHI LI
By Counsel

John C. Kiyonaga
600 Cameron Street
Alexandria, Va. 22314
Tel: 703-739-0009
Fax: (703) 340-1642
john@johnckiyonaga.com

14

Counsel for Defendant

<u>Certificate of Service</u>

I hereby certify that on August 3, 2020, I hand delivered the foregoing to the Clerk of Court, and served electronically AUSA Dave Peters.

/s/

John C. Kiyonaga