IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | CASE NO. 1:19-CR-334-01 |
| ) | (Judge Brinkema) |
| XIZHI LI, ) | |
| ) | |
| Defendant ) | |

## POSITION OF DEFENDANT WITH
## RESPECT TO SENTENCING FACTORS

COMES NOW the defendant, Xizhi Li, by Gregory B. English, his retained counsel, and submits this pleading in accordance with Rule 32 of the Federal Rules of Criminal Procedure and U.S.S.G. §6A1.2. We concur with the computations of the probation office and have no objections to the presentence report. We submit that the appropriate sentence would be the 180 month term of imprisonment jointly recommended by the parties.

### The §3553(a) Factors

Title 18, U.S. Code, §3553(a) supports our request for this sentence. The decision of the Supreme Court in United States v. Booker, 543 U.S. 220 (2005), effectively rendered the Federal Sentencing Guidelines advisory. Booker requires this court to consider all of the factors listed at 18 U.S.C. §3553(a), including the advisory guidelines, in imposing a just sentence. The overriding principle of §3553(a) is that courts impose a

sentence "sufficient, but not greater than necessary" to comply with the four purposes of sentencing which are retribution, deterrence, incapacitation, and rehabilitation. This is commonly referred to as the "Parsimony Provision." The Parsimony Provision effectively puts a ceiling on the sentence provided by the other factors. Furthermore, the judge is required to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. §3582(a).

These §3582(a) factors are listed as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the kinds of sentence available;
(3) the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guidelines range;
(4) the need to avoid unwarranted sentencing disparity; and
(5) the need to provide restitution where applicable.

It is important to note that neither the statute itself nor Booker suggest that any one of these factors is to be given greater weight than any of the others, but all are subservient to the §3553(a) mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing.

The Supreme Court in Kimbrough v. United States, 552 U.S. 85 (2007), and Gall v. United States, 552 U.S. 38 (2007), reemphasized that the federal sentencing guidelines are simply an advisory tool to be considered alongside other statutory considerations spelled out in 18 U.S.C. §3553(a). In two summary reversals the Supreme Court expressed in no uncertain terms that the guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors set forth at 18 U.S.C. §3553(a). *See*

Nelson v. United States, 555 U.S. __, __ S.Ct. __, 2009 WL 160585 (Jan. 26, 2009); and Spears v. United States, 555 U.S. __, __ S.Ct. __, 2009 WL 129044 (Jan. 21, 2009).

"Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable," the court held in Nelson. 2009 WL 160585, *1. "The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *Id.* at *2. In other words, sentencing courts commit legal error by using a sentencing guidelines range as a default to be imposed unless a basis exists to impose a sentence outside that range. *See also* United States v. Johnson, F.3d __ (2009), 2009 WL 161733 at *5 (6th Cir. Jan. 26, 2009) ("[I]t is clear that Spears applies with equal force to sentencing decisions under the new crack-cocaine guidelines and that district courts may categorically reject and vary from the new guidelines based on policy disagreements with those guidelines.").

We ask this court to consider the following when applying the §3553(a) factors.

Mr. Li has no prior record of criminal convictions. Paragraph 80, Page 17, Presentence Report (hereinafter PSR).

Mr. Li was born in China where he was reared in a rural area where his family worked on farms. Paragraphs 85-86, Page 18, PSR. His parents were not educated, the family was poor, and he attended school for only two years before he was forced to work faming the land. (Paragraph 86, Page 18, PSR). They left China for Mexico to find a better life. Id. He enrolled in school there where he learned Spanish and completed an elementary level education. Id. The family eventually came to the United States. Id. Despite his humble beginnings Mr. Li has always supported his children and sent them

to college. Paragraph 88-89, Page 19, PSR.  He has accepted responsibility for his criminal activity in the instant case.

There is another reason why any period of incarceration in excess of 15 years would be inappropriate.  He is an extremely small person who is 5' 6" tall and weighs 145 pounds. Paragraph 90, Page 19, PSR.  His health has been compromised due to his high blood pressure and recent COVID infection.  Id.  An ugly reality of racism in the United States is that Asians here have been subjected to increasing numbers of attacks and other forms of harassment in recent years.  During incarceration, he obviously will be a target for bullying because his small size would cause the thugs in prison to perceive him as being an easy victim which would invite attacks.

We also ask this court to consider the fact that the defendant's felony conviction will have a greater impact upon him than it would upon most Americans.  Since he is from a culture that was heavily influenced by Confucian principles, he believes that his actions have disgraced his ancestors.  He is truly remorseful for engaging in criminal activity.  He has experienced a "loss of face" in that he has caused great shame to his family because of this illegal activity.  This has caused a profound effect on him which makes it extremely unlikely that he would ever be a recidivist.  This is an aspect of Chinese culture which most Americans simply do not understand.

Under these circumstances, we respectfully submit that this court should depart from the guidelines and impose the recommended sentence.

One other factor supports this position.  In the past three decades the United States has experienced significant sentence inflation as the number of prisoners nearly tripled between 1987 and 2007 with more than 2.5 million adults incarcerated nationwide in the

beginning of 2008, more than one in every 100 citizens.[1] It has continued to grow since then. The United States has 5% of the world's population and 25% of the world's prison population.[2] In the words of former Virginia Senator Jim Webb, "either we are the most evil people on Earth or we are doing something very wrong."[3] According to U.S. Courts News, the annual cost of imprisonment in a Bureau of Prisons facility for fiscal year 2010 was $28,284.16, and the annual cost of probation supervision for the same period was $3,938.35. These amounts have increased every year since then.

We respectfully submit that considering the economic crisis this country is facing, it should not be worsened by the needless incarceration of the defendant for longer than necessary.

In order to enhance Mr. Li's rehabilitation while incarcerated, we ask that this court make the following recommendations to the BOP:

1. Recommend that the defendant be incarcerated in southern California so he will be able to have contact with his family.

2. Recommend that the defendant be housed in a minimum security prison so he will be less likely to be victimized by violent inmates.

3. Recommend that the defendant be allowed to participate in the five hundred hour drug rehabilitation program in order to address his addiction.

---

[1] "Expanding the Zones, a Modest Proposal to Increase the Use of Alternatives to Incarceration in Federal Sentencing," *Criminal Justice* (Publication of the American Bar Association), Winter 2010, by J. P. Hanlon, Sean Hecker and David Gopstein, at Page 26.

[2] "What's Wrong With Our Prisons?", *Parade Magazine*, March 29, 2009 at Page 4 by former Virginia Senator Jim Webb.

[3] *Id.*

      4.  Recommend that he be allowed to participate in education programs including classes to receive his GED, English as a second language, and vocational training so he will be better able to support himself when he is eventually released.

                                                         Respectfully submitted,

                                                           /s/  Gregory B. English
                                                           Gregory B. English, VSB#25928
                                                           The English Law Firm, PLLC
                                                           601 King Street, Suite 406
                                                           Alexandria, Virginia  22314
                                                           (703) 739-1368 / Fax (703) 836-6842
                                                           gbeuva@gmail.com
                                                           *Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of October, 2021 a true copy of the foregoing pleading was filed with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

    AUSA David A. Peters
    david.peters@usdoj.gov

    /s/ Gregory B. English
    _____
    Gregory B. English